# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 6, 2026                    Decided April 7, 2026

No. 25-1187

ALON REFINING KROTZ SPRINGS, INC.,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

———

Consolidated with 25-1197

———

On Petitions for Review of a Final Action
of the Environmental Protection Agency

———

*Daniel J. Feith* argued the cause for petitioners. With him on the briefs were *Allyson N. Ho*, *Stephen J. Hammer*, *Robert W. Frey*, *Peter C. Whitfield*, *Peter A. Bruland*, *Cody M. Akins*, *Christine M. Buzzard*, *Lavi M. Ben Dor*, and *M. Christian Talley*.

*Redding Cofer Cates*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Adam R. F. Gustafson*, Principal Deputy Assistant

Attorney General, *Robert N. Stander*, Deputy Assistant Attorney General, and *Alexander M. Purpuro*, Attorney.

Before: SRINIVASAN, *Chief Judge*, RAO and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

Concurring opinion filed by *Circuit Judge* RAO.

PAN, *Circuit Judge*: The Clean Air Act's Renewable Fuel Standard (RFS) program requires oil refineries to introduce renewable fuels into the nation's energy supply by blending them into the transportation fuels that are sold at gas stations. *See* 42 U.S.C. § 7545(o)(2)(A). Small refineries that would experience "disproportionate economic hardship" by complying with the RFS program's mandates can petition the Environmental Protection Agency (EPA) for exemptions. *Id.* § 7545(o)(9)(B). Small refineries are defined as those with an average daily throughput of not more than 75,000 barrels of crude oil in a calendar year. *Id.* § 7545(o)(1)(K). This case concerns how to apply that definition of "small refinery."

Petitioners are refineries that did not exceed the 75,000-barrel limit in 2024. In 2025, they petitioned the EPA for small-refinery exemptions from their 2024 RFS obligations. The EPA denied their exemption applications based on a regulation that requires applicants to meet the definition of "small refinery" for both "the most recent full calendar year prior to seeking" the exemption and "the year or years for which an exemption is sought." 40 C.F.R. § 80.1441(e)(2)(iii). The EPA interpreted that regulation to require Petitioners to comply with the 75,000-barrel limit in 2023 as well as 2024. Because the EPA's interpretation of its own regulation is contrary to the provision's plain text, we vacate the EPA's

denial orders and remand to the agency for further proceedings consistent with this opinion.

**I.**

**A. Legal Background**

The RFS program requires oil refineries and fuel importers to blend renewable fuels into the transportation fuels that they produce or import. *See* 42 U.S.C. § 7545(o)(2)(A); 40 C.F.R. § 80.2. Each year, the EPA determines the amount of renewable fuel that must be introduced into the U.S. fuel supply and sets a standard for industry participants to meet. *See* 42 U.S.C. § 7545(o)(2)(B)(ii), (o)(3)(B)(i); 40 C.F.R. § 80.1405. "Generally, [the] EPA's RFS industry standards take the form of a percentage calculated by dividing the applicable volume of each renewable fuel by the agency's estimate of the total volume of fuel the nation will consume." *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 701 (D.C. Cir. 2024). Refineries and importers are required to demonstrate to the EPA that they have complied with their RFS obligations by meeting the industry standards for each year. *See* 40 C.F.R. §§ 80.1427(a), 80.1451(a)(1).

When Congress created the RFS program in 2005, it was "concerned" that RFS "obligations could work special burdens on small refineries that lack the inherent scale advantages of large refineries and sometimes supply a major source of jobs in rural communities." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386–87 (2021) (cleaned up). Congress therefore created the "small refinery" exemption for refineries that produce, on average, no more than 75,000 barrels a day "for a calendar year." 42 U.S.C. § 7545(o)(1)(K). Specifically, Congress defined "small refinery" as follows:

> [A] refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels.

*Id.*; *see also* 40 C.F.R. § 80.2 (defining "small refinery" in terms identical to the statutory definition in § 7545(o)(1)(K)).

Congress rolled out the small-refinery exemption in three phases, reflected in subsections (A) and (B) of § 7545(o)(9). In subsection (A)(i), Congress gave all small refineries a blanket exemption from RFS requirements until 2011. 42 U.S.C. § 7545(o)(9)(A)(i). In subsection (A)(ii), it instructed the EPA to extend that exemption for at least two more years for any small refinery that the Department of Energy found "would be subject to a disproportionate economic hardship if required to comply" with the RFS program. *Id.* § 7545(o)(9)(A)(ii)(II). And most relevant here, in subsection (B), Congress offered the possibility of further relief in future years:

> A small refinery may at any time petition the [EPA] for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship.

*Id.* § 7545(o)(9)(B)(i). By allowing small refineries to petition the EPA "at any time," Congress demonstrated its intention "that small refineries might apply for exemptions in different years in light of market fluctuations and changing hardship conditions." *HollyFrontier*, 594 U.S. at 393.

The EPA adopted implementing regulations for the RFS program in 2010 and revised them in 2014. The pertinent EPA regulation states:

> In order to qualify for an extension of its small refinery exemption, a refinery must meet the definition of "small refinery" . . . for the most recent full calendar year prior to seeking an extension and must be projected to meet the definition of "small refinery" . . . for the year or years for which an exemption is sought. Failure to meet the definition of small refinery for any calendar year for which an exemption was granted would invalidate the exemption for that calendar year.

40 C.F.R. § 80.1441(e)(2)(iii) (the 2014 Eligibility Regulation).

## B. Factual Background

In May 2025, Petitioners — Alon Refining Krotz Springs, Inc. (Alon) and HF Sinclair Refining & Marketing LLC and HF Sinclair Parco Refining LLC (together, Parco) — applied for exemptions from RFS obligations for the Alon and Parco refineries for the 2024 compliance year. Petitioners' respective applications stated that their average daily throughput in 2024 was below the 75,000-barrel threshold, and that they each therefore qualified as a "small refinery" under the Clean Air Act. No Petitioner sought an exemption for the 2023 compliance year or referred to its throughput for 2023.

After Petitioners submitted their exemption applications, the EPA informed them that their eligibility for exemptions in 2024 depended in part on whether they had exceeded the throughput threshold in 2023. The agency cited its 2014

Eligibility Regulation, 40 C.F.R. § 80.1441(e)(2)(iii), which, according to the EPA, requires small refineries to not exceed the throughput threshold for two years — both the year for which an exemption is sought and the preceding year. The EPA did not refer to the statutory definition of "small refinery" in the Clean Air Act. Petitioners responded by explaining that the EPA's position was contrary to the statute and inconsistent with the plain terms of the EPA's own regulation.

Three months later, in August 2025, the EPA formally denied Petitioners' exemption applications for 2024. The agency noted that Petitioners' crude oil throughput exceeded 75,000 barrels per day in 2023, and Petitioners therefore did not qualify for the small-refinery exemption under the 2014 Eligibility Regulation. The EPA reasoned that the regulation "requires a qualifying small refinery to have a crude oil throughput of less than 75,000 [barrels per day] for two consecutive years," J.A. 19, and asserted that such a requirement was not inconsistent with the "statutory definition of small refinery" because the statute "does not include a specific year," J.A. 18.

In September 2025, Petitioners asked this court to review the EPA's denial of their exemption applications. Although their petitions for review initially were consolidated with other petitions challenging the EPA's August 2025 denials of small-refinery exemptions, we granted Petitioners' requests to sever their cases from the rest, consolidate them with each other, and set them for expedited briefing and consideration.

Petitioners assert that expedition is necessary to prevent irreparable injury to them and to preserve their ability to obtain meaningful relief. They explain that they purchased and submitted to the EPA certain credits, known as Renewable Identification Numbers (RINs), to comply with their RFS

obligations for 2024. If they prevail in this appeal and show disproportionate economic hardship on remand, the RINs will be returned to them, but the 2024 RINs will "expire" and lose value after the deadline for 2025 compliance passes.[1] The deadline for 2025 obligations is likely to be September 1, 2026. *See* 40 C.F.R. § 80.1451(f)(1)–(2); Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, 91 Fed. Reg. 16,388 (Apr. 1, 2026).

## II.

Petitioners mount two challenges to the EPA's orders denying their applications for small-refinery exemptions for the 2024 compliance year. They take issue with the EPA's

---

[1] A RIN is a credit that represents the blending of a certain quantity of renewable fuel (*e.g.*, ethanol blended with fossil fuel) that is manufactured or imported. 40 C.F.R. § 80.1426(a); *id.* § 80.1429(b) (a RIN is created when biofuel is blended into petroleum-based transportation fuel). Refineries demonstrate their compliance with their RFS obligations by "retiring" — *i.e.*, submitting to the EPA — the requisite number of RINs. A refinery that blends biofuel with fossil fuel to create a RIN may keep it to demonstrate compliance or sell it to another refinery. *See id.* §§ 80.1425−80.1429; *see also Sinclair Wyo. Refin.*, 114 F.4th at 701 (RINs that are "separated" from their assigned batch "may be traded in the market to other obligated parties in need of RINs or used to demonstrate compliance with the RFS program." (cleaned up)). "Any given refinery may therefore comply with the law thanks to its own blending efforts, the purchase of credits from someone else, or a combination of both." *HollyFrontier*, 594 U.S. at 386. A RIN is valid for compliance "during the calendar year in which it was generated, or the following calendar year," after which it becomes "expired" and "cannot be used for compliance purposes." 40 C.F.R. § 80.1428(c). That means any 2024 RINs returned to Petitioners on remand can be used only for 2024 or 2025 compliance obligations. *Id*. § 80.1451(f)(1)(A)(1).

requirement that applicants meet the definition of "small refinery" for two consecutive years to be eligible for the exemption, arguing that the EPA's position (1) is contrary to the Clean Air Act, which requires only that a refinery's average daily throughput not exceed the 75,000-barrel threshold for "a calendar year," and (2) violates the 2014 Eligibility Regulation when, as here, a refinery can satisfy the Regulation's plain terms with a single year of qualifying throughput. Because we agree that the EPA's denial orders contradict the plain language of the 2014 Eligibility Regulation, we need not reach Petitioners' statutory challenge.

## A.

The court "shall . . . hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C); *see HollyFrontier*, 594 U.S. at 388, 399. And "it is axiomatic . . . that an agency is bound by its own regulations." *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (cleaned up). "Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Id.* (cleaned up).

When it comes to interpreting agency regulations, "a court must exhaust all the traditional tools of construction" and "carefully consider the text, structure, history, and purpose of [the] regulation." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (cleaned up). Then, we "must enforce the plain meaning those methods uncover." *Id*. at 581. We will thus "reject" any agency action that "would contravene the plain text of . . . [a] regulation[]." *Norfolk S. Ry. Co. v. Surface Transp. Bd.*, 72 F.4th 297, 307 (D.C. Cir. 2023) (citation omitted). And "no

issue of deference" to the agency arises when the meaning of the regulation is clear. *Newman v. FERC*, 27 F.4th 690, 696, 698 (D.C. Cir. 2022).

**B.**

Here, we apply the plain text of the 2014 Eligibility Regulation, which is unambiguous. The regulation provides that a refinery is eligible for a small-refinery exemption if it meets the definition of "small refinery" in (1) "the most recent full calendar year prior to seeking an extension"; and (2) "the year . . . for which an exemption is sought." 40 C.F.R. § 80.1441(e)(2)(iii). Petitioners applied in 2025 for exemptions from their 2024 RFS obligations. Accordingly, for Petitioners, the "most recent full calendar year prior to seeking an extension" was 2024, and "the year . . . for which an exemption [was] sought" was also 2024. It is undisputed that Petitioners met the definition of "small refinery" in 2024 because their average daily throughputs did not exceed the 75,000-barrel threshold. Based on a straightforward application of the regulation's text, Petitioners were eligible for small-refinery exemptions for the 2024 compliance year.

The EPA, however, looked at 2024 *and* 2023 throughput data when considering Petitioners' exemption applications, and it denied the applications on the ground that Petitioners' crude-oil throughputs were too high in 2023. According to the EPA, the Regulation requires applicants to meet the definition of "small refinery" for "two consecutive years." Gov't Br. 40. That interpretation is based on language in the Regulation which specifies that the applicant "*must be projected* to meet the definition of 'small refinery' . . . for the year or years for which an exemption is sought." 40 C.F.R. § 80.1441(e)(2)(iii) (emphasis added). Because the word "projected" is forward looking, the EPA argues that "the Regulation contemplates a

petition that is received before or during the requested exemption year." Gov't Br. 40. In the denial orders, the EPA asserted that the Regulation was "written to apply" in cases where a petitioner files its application in the year for which the exemption is sought. J.A. 19.

Even if the EPA is correct that the Regulation was written with a different set of circumstances in mind, the agency still must grapple with the instant facts: Petitioners retroactively requested small-refinery exemptions by applying in the year *after* the one for which they sought the exemption. Despite the EPA's emphasis of the word "projected," the agency does not ultimately contend that its regulation prohibits retroactive petitions. *See* 42 U.S.C. § 7545(o)(9)(B)(i) (small refineries may petition for exemptions "at any time"); 40 C.F.R. § 80.1441(e)(2) (same). If Petitioners' exemption applications were properly before the agency, the EPA was bound to honor the plain terms of its own Regulation when considering those applications. We thus conclude that the Regulation rendered Petitioners eligible for exemptions from their 2024 RFS obligations. *See Nat'l Env't Dev.*, 752 F.3d at 1009 ("An agency is not free to ignore or violate its regulations while they remain in effect." (cleaned up)); *see also Kisor*, 588 U.S. at 575.

The EPA, lacking a persuasive textual rejoinder, argues that Petitioners' interpretation would produce "absurd and inequitable" results. Gov't Br. 38; *see also id.* at 43. The agency posits that "two identically situated parties with the same throughput could petition [the] EPA for an exemption for the same year and receive different decisions based on *when they submitted their petitions*." *Id.* at 37 (emphasis in original). For instance, if these Petitioners had requested their extension in 2024 (rather than in 2025), then the "calendar year prior to seeking an extension" would have been 2023; the "year . . . for

which an exemption [was] sought" would still have been 2024; and Petitioners would have been ineligible for the exemption based on their 2023 throughput. And in situations where a refinery waited several years to apply, "Petitioners' interpretation would require [the] EPA to consider crude oil throughput data from several years *after* the requested exemption year." *Id.* at 44 (emphasis in original).

We are unpersuaded. Because the regulation's text is clear, we have "no business deferring to any other reading, no matter how much [the EPA] insists" that its preferred reading "would make more sense." *Kisor*, 588 U.S. at 575; *see also Texas v. EPA*, 726 F.3d 180, 189 (D.C. Cir. 2013) ("A bare assertion of absurdity cannot overcome the plain meaning of a statute." (cleaned up)). Indeed, "courts may not use the absurdity canon to set aside plain text unless 'the absurdity and injustice of applying the provision to the case[] would be so monstrous that all mankind would, without hesitation, unite in rejecting the application.'" *United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021) (quoting *Sturges v. Crowninshield*, 17 U.S. (4. Wheat) 122, 203 (1819) (Marshall, C.J.)). At bottom, we are not at liberty to correct mere "substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." Antonin Scalia & Bryan A. Garner, *Reading Law* 238 (2012).

Here, the drafters of the 2014 Eligibility Regulation apparently did not appreciate the effect that the provision would have if refineries chose to apply for the exemption retroactively, *i.e.*, in a year *after* the one for which the exemption is sought. But the EPA's claim of absurdity appears to be overstated. Its concern that identically situated parties would be treated differently depending on "*when they submitted their petitions*" would likely be addressed by the refineries themselves, which would have every incentive to

consistently file their exemption applications in the years when the applications would be granted. And if refineries wait "several years to apply" but nevertheless qualify for the exemption, that would not contravene Congress's apparent intent to allow small refineries to benefit from the exemption in each calendar year that they qualify, regardless of when they apply. *See* 42 U.S.C. § 7545(o)(1)(K) (defining "small refinery" in terms of throughput data for "*a* calendar year" (emphasis added)); *id.* § 7545(o)(9)(B)(i) (small refineries may apply "at any time"); 40 C.F.R. § 80.1441(e)(2) (same).[2] Applying the plain language of the 2014 Eligibility Regulation thus does not "def[y] rationality" nor render the regulation "nonsensical or superfluous." *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (cleaned up).[3]

---

[2] It is unlikely that refineries would apply "several years later" for exemptions because, as discussed *infra* section III, the retroactive granting of an exemption would entitle the refinery to a refund of the RINs that the refinery retired to comply with RFS obligations in the exemption year — but such RINs would have expired and lost much of their value two years after they were generated.

[3] We recognize that our interpretation of the 2014 Eligibility Regulation and the Supreme Court's decision in *HollyFrontier* highlight an apparent tension between the Regulation and the statutory definition of "small refinery" in the Clean Air Act. Nevertheless, we decline to address Petitioners' claim that the denial of their exemption applications for 2024 violated the statute because it is unnecessary to do so. Our determination that the agency violated the Regulation enables us to provide Petitioners with their requested relief — *i.e.*, vacatur of the denial orders and a remand for further proceedings. *See PDK Lab'ys, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[T]he cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more."); *see also Morse v. Frederick*, 551 U.S. 393, 431 (2007)

13

**III.**

Petitioners emphasize that the clock is ticking for them to obtain meaningful relief.  If, on remand, the EPA grants their requested 2024 exemptions, Petitioners will be entitled to a refund of the RINs that Petitioners retired to satisfy their 2024 compliance obligations.  But the RINs are not fully fungible: They may be used to demonstrate compliance only for the calendar year in which they were generated (2024) or the following calendar year (2025).  40 C.F.R. § 80.1427(a)(6)(i).  Beyond that point, the RINs expire and become "invalid." *Id.* § 80.1428(c).  Any expired 2024 RINs will retain some residual value to the extent that they can be sold to refineries that need to satisfy outstanding, non-exempted 2024 and 2025 obligations.  But the utility of the RINs and their consequent value will decrease significantly after the compliance deadline for 2025 RFS obligations passes.

It now appears that the compliance deadline for 2025 RFS obligations, *i.e.*, the date that the 2024 RINs will expire, will be September 1, 2026.[4]  Before that timing became clear, Petitioners urged us to order the EPA to act on their exemption

---

(Breyer, J., concurring in the judgment in part and dissenting in part) (same).

[4]     The deadline for the 2025 compliance year is the "next quarterly reporting deadline" after the EPA's final rule setting 2026 RFS obligations becomes effective.  40 C.F.R. § 80.1451(f)(1).  The EPA issued a final rule on March 27, 2026, setting the RFS fuel requirements for 2026, and that rule will become "effective on June 15, 2026." *See* Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, 91 Fed. Reg. at 16,388.  If the EPA's final rule becomes effective on June 15, 2026, as currently anticipated, the RFS compliance deadline will be September 1, 2026. *See* 40 C.F.R. § 80.1451(f)(1)(i)(A)(2), (f)(2).

petitions "at least 21 days before the [compliance] deadline." Pets. Br. 53. The EPA, meanwhile, insisted that it would need ninety days to reconsider the petitions. *See* Oral Arg. Tr. 61:23–24. The agency's request for ninety days is grounded in the statute. *See* 42 U.S.C. § 7545(o)(9)(B)(iii) ("The Administrator shall act on any petition submitted by a small refinery for a hardship exemption not later than 90 days after the date of receipt of the petition.").

The deadline requested by Petitioners now appears to be unnecessary because even if the EPA takes ninety days to reconsider Petitioners' exemption applications, the agency should still have sufficient time to act well before the anticipated RIN-expiration date of September 1, 2026. We therefore see no need to intervene at this time to prescribe any particular course of action. Nothing in our decision forecloses Petitioners from seeking further relief if the EPA fails to lawfully adjudicate the petitions on remand. *See* 42 U.S.C. § 7607(b)(1); *cf. Sinclair Wyo. Refin.*, 114 F.4th at 726 n.19.

\* \* \*

For the foregoing reasons, we vacate the EPA's orders denying Petitioners' applications for small-refinery exemptions for the 2024 compliance year, and remand for further proceedings consistent with this opinion.

*So ordered.*

RAO, *Circuit Judge*, concurring: I agree with the majority that EPA's denials of the petitioners' small refinery exemptions were contrary to regulation. I write separately to identify a more fundamental problem—EPA's denials also violated the Clean Air Act. EPA required petitioners to show two years of qualifying throughput, but the Act explicitly defines small refinery status based on one year of throughput.

To avoid the plain meaning of the Act, EPA primarily argues that petitioners' statutory challenge is untimely because it would functionally undermine the agency's 2014 regulation. But the petitioners seek to set aside only the 2025 denial decisions, not the 2014 regulation. I would not avoid deciding the statutory question merely because it might cast doubt on a regulation that is insulated from challenge by the Clean Air Act's time bar. Petitioners raised a timely challenge to the denials of their small refinery exemptions, and I would hold the denial decisions were contrary to the Act.

\* \* \*

Petitioners requested small refinery exemptions for calendar year 2024. Because they did not have two consecutive years of qualifying throughput, EPA denied their exemptions. I would hold the denials were contrary to law because the Clean Air Act explicitly provides for small refinery exemptions based on only one year of qualifying throughput.

In assessing whether EPA's actions violated the Clean Air Act, this court does not defer to the agency's views. Rather, we must exercise "independent judgment" to decide whether EPA "acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

The Renewable Fuel Standard ("RFS") program requires refineries and other obligated parties to introduce increasing amounts of renewable fuel into the fuel supply. *Sinclair*

*Wyoming Refin. Co. v. EPA*, 114 F.4th 693, 701 (D.C. Cir. 2024). Concerned that the RFS program could impose "special burdens on small refineries that lack the inherent scale advantages of large refineries," Congress provided exemptions for small refineries. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2175–76 (2021) (cleaned up).

The Clean Air Act defines "small refinery" as "a refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." 42 U.S.C. § 7545(*o*)(1)(K). By using the articles "a" and "the" in front of the singular term "calendar year," the statute categorizes refineries as "small" based on one year of throughput. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1482 (2021) (holding that use of the indefinite article "a" connotes a single object). By contrast, adjacent subsections of the Act refer to plural terms like "calendar years" and "consecutive years." *See, e.g.*, 42 U.S.C. § 7545(*o*)(2)(B)(ii); *id.* § 7545(*o*)(6)(C)(ii); *id.* § 7545(*o*)(7)(F)(i). The statutory context confirms that Congress's definition of "small refinery" by reference to "a calendar year" or "the calendar year" requires only one year of qualifying throughput.

This plain meaning is reinforced by the Supreme Court's decision in *HollyFrontier*. In discussing whether a refinery could obtain an extension of the small refinery exemption after a previous exemption had lapsed, the Court detailed the following scenario:

> [I]magine a small refinery avails itself of the blanket exemption in 2008 and 2009 …. Then in 2010, because of an increase in production

> capacity, the refinery loses "small refinery" status …. One year later, production capacity falls and the refinery moves back into small refinery status for 2011.

*HollyFrontier*, 141 S. Ct. at 2179 (cleaned up). By explaining that a refinery can move in and out of small refinery status depending on its yearly production, the Court implicitly recognized that "small" is determined on a single-year basis.

Because the Clean Air Act defines small refinery status by reference to a single year of qualifying throughput and EPA denied the petitioners' exemptions for lacking two years of qualifying throughput, EPA's denials were contrary to the Act.

EPA resists this interpretation by arguing that the Clean Air Act does not specify which calendar year is relevant for determining small refinery status. Even if true, that would not help EPA. The denials here were contrary to law because the statute requires only one year of qualifying throughput, not two.

EPA also contends that requiring two years best fits with the prospective nature of the small refinery exemption scheme. On EPA's view, the statute contemplates that applications will be submitted before a refinery knows its throughput for an exemption year. The agency argues it can better determine whether a refinery will qualify for the exemption by looking at the prior year's throughput. This prospective-only interpretation conflicts with EPA's practice of granting retrospective exemptions and arguably conflicts with the Clean Air Act, which allows a refinery to seek an exemption "at any time." 42 U.S.C. § 7545(*o*)(9)(B)(i). Even assuming EPA's interpretation is correct, the agency's administrability concerns cannot override the Act's single-year definition of small refinery. *See Niz-Chavez*, 141 S. Ct. at 1485 ("[P]leas of

administrative inconvenience and self-serving regulations never justify departing from the statute's clear text.") (cleaned up).

As the facts of these cases demonstrate, a refinery that is small one year may not be so the next. Petitioners qualified for small refinery exemptions based on one year of production but were denied exemptions because their throughput was not at or below the limit for two years. EPA's requirement makes it harder for small refineries to secure the exemption, thereby undermining the program Congress established to "protect small refineries" from the "burdens" of RFS requirements. *See HollyFrontier*, 141 S. Ct. at 2175.

EPA denied the petitioners' exemptions because they failed to demonstrate two years of qualifying throughput. These denials were contrary to the Clean Air Act, which provides for exemptions based on only one year of qualifying throughput. EPA has discretion to administer the complex RFS program, but the agency cannot employ its discretion to alter the specific criteria set by Congress.

\* \* \*

Perhaps recognizing that a two-year requirement cannot be squared with a statute requiring one year of qualifying throughput, EPA devotes most of its briefing to arguing that petitioners' statutory challenge is untimely. EPA maintains that a statutory challenge to the 2025 denial decisions is time barred because it would undermine the 2014 regulation long after the period for challenging that regulation expired. *See* Gov't Br. 18 (framing the petitioners' statutory challenge as "nothing more than an untimely challenge to the 2014 Eligibility Regulation itself"). I agree a petition seeking vacatur of the 2014 regulation would not be timely. But the petitioners challenge the denials of their small refinery exemptions, and they ask this

court to set aside those denials, not EPA's regulation. We may review this timely statutory challenge to the denial decisions.

The Clean Air Act includes a mandatory time bar that provides a petition for review "shall be filed" within 60 days after notice of the agency's "promulgation, approval, or action" appears in the Federal Register.[1] 42 U.S.C. § 7607(b)(1). We have held this time bar is jurisdictional.[2] *Growth Energy v. EPA*, 5 F.4th 1, 12 (D.C. Cir. 2021). The time bar applies to the denial of a small refinery exemption.

Petitioners challenged the August 2025 denials of their small refinery exemptions within 60 days of publication and asked this court to set aside the denials as inconsistent with the 2014 regulation and the Clean Air Act. EPA concedes that petitioners' regulatory challenge to the denial decisions is timely because it was brought within 60 days. But the same is true of petitioners' statutory challenge. Section 7607(b)(1) broadly refers to judicial review of agency "action[s]." The reviewable actions here are the denials of small refinery

---

[1] The one exception to this rule allows later petitions "based solely on grounds arising after" the initial 60 days. 42 U.S.C. § 7607(b)(1).

[2] While this court has treated the time bar in section 7607(b)(1) as jurisdictional, it is likely not jurisdictional under the Supreme Court's recent decisions. "[M]ost time bars are nonjurisdictional." *Wilkins v. United States*, 143 S. Ct. 870, 877 (2023) (cleaned up). The time bar in section 7607(b)(1) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of" this court. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 438 (2011) (cleaned up). The statute simply provides that petitions for review "shall be filed" within 60 days. 42 U.S.C. § 7607(b)(1). In an appropriate case, this court should revisit the question of whether this mandatory time bar is in fact jurisdictional.

exemptions, which the petitioners timely challenged on both regulatory and statutory grounds.

To avoid this straightforward conclusion, EPA tries to recharacterize petitioners' statutory objection to the denial decisions as an attack on the 2014 regulation. EPA maintains that the denials applied the 2014 regulation; therefore, a statutory challenge to the denials is a time barred attack on the validity of the regulation. EPA relies on cases holding that the "mere application of an old regulation" to new parties or in new circumstances cannot support untimely efforts to set aside or amend an old regulation. *Sierra Club de Puerto Rico v. EPA*, 815 F.3d 22, 27–28 (D.C. Cir. 2016); *see also Sinclair*, 114 F.4th at 717–18; *Am. Rd. & Transp. Builders Ass'n v. EPA* ("*ARTBA II*"), 705 F.3d 453, 457–58 (D.C. Cir. 2013).

These cases are inapposite, however, because the petitioners are not seeking to set aside the 2014 regulation. Under section 7607(b)(1), the timeliness of a petition for review turns on the timing of the "promulgation, approval, or action" in dispute. To determine what agency action is in dispute, we look to "the substance of the petitioner's brief and the relief requested." *Nat. Res. Def. Council, Inc. v. EPA*, 824 F.2d 1146, 1149–50 (D.C. Cir. 1987) (en banc). For example, in considering whether a petitioner brought an untimely "back-door" challenge to a 1976 regulation or a timely challenge to the 1985 withdrawal of proposed amendments to that regulation, we emphasized that the petitioner sought to set aside only the withdrawal, not the regulation. *Id.* at 1150. Because the petition challenged only the 1985 action, it was not time barred. *Id.* The same logic applies here. Petitioners explicitly disclaim any relief that would set aside or amend the 2014 regulation. Instead, they ask this court to set aside EPA's

2025 denial decisions as contrary to the Clean Air Act. Their statutory challenge is therefore timely.[3]

At oral argument, EPA retreated from the case law and instead argued that accepting petitioners' statutory challenge would effectively or functionally vacate the 2014 regulation. EPA claimed that, if the petitioners prevailed as to their statutory argument, the agency could not "continue to use the 2014 regulation at all" and it would be "*as if* the Court has invalidated it." Oral Arg. Tr. 30:6–8 (emphasis added). But nothing in the Clean Air Act bars judicial review of discrete agency actions merely because such review might cast doubt on a regulation insulated from direct review.

Parties may challenge denials of small refinery exemptions within 60 days of publication. Petitioners timely challenged the denial decisions, and section 7607(b)(1)'s time bar does not prevent this court from evaluating whether EPA's denial decisions were contrary to law.[4]

---

[3] Nothing in this concurrence calls into doubt the long line of cases holding that the application of a regulation cannot be used to set aside or amend a regulation outside of the review period in section 7607(b)(1). *See ARTBA II*, 705 F.3d at 458 (concluding that such a challenge "would make a mockery of Congress' careful effort to force potential litigants to bring challenges to a rule issued under this statute at the outset") (cleaned up); *Sierra Club de Puerto Rico*, 815 F.3d at 27 (similar). Petitioners here do not (and cannot) seek to set aside the 2014 regulation because the 60-day window has long since passed.

[4] EPA is right to be concerned that the correct interpretation of the small refinery exemption—requiring only one year of qualifying throughput—is at odds with the agency's two-year requirement. Because we cannot set aside the 2014 regulation, the agency must address these arguments as it sees proper. For instance, EPA could

8

* * *

EPA withheld small refinery exemptions from petitioners because they could not show two years of qualifying throughput. These denial decisions are contrary to the Clean Air Act, which provides an independent ground for setting them aside.

---

decide to bring its regulations in line with the Clean Air Act and determine small refinery status by reference to one year of qualifying throughput. *See HollyFrontier*, 141 S. Ct. at 2179.